Matthew J. Langley, California Bar No. 342846
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 773-554-9354
matt@almeidalawgroup.com

Andrew G. Gunem
California Bar No. 354042
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
t: (872) 263-1100
agunem@straussborrelli.com

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN APPEL, *individually and on behalf of all others similarly situated*,<br><br>    *Plaintiff*,<br><br>    v.<br><br>METROPOLIS TECHNOLOGIES, INC.,<br><br>    *Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR:**<br>   **1. DRIVER'S PRIVACY PROTECTION ACT, 18 U.S.C. § 2721 et seq.**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1

Plaintiff Brendan Appel ("Plaintiff") brings this class action lawsuit individually and on behalf of all others similarly situated (the "Class Members") against Metropolis Technologies, Inc. ("Metropolis" or "Defendant"). The allegations set forth herein are based on Plaintiff's personal knowledge and on information and belief as to all other matters based upon investigation by counsel.

## **INTRODUCTION**

1.    This is a privacy class action lawsuit against Defendant for knowingly obtaining statutorily protected personal information—including names, addresses and telephone numbers—from departments of motor vehicles ("DMVs"), including the Illinois Department of Motor Vehicles, in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721-2725 ("DPPA").

2.    Though Metropolis owns and operates more than 4,000 parking lot locations around the country, it does not think of itself as a parking lot company.[1]  Instead, it describe itself as "an artificial intelligence company whose computer vision platform enables checkout-free payment experiences."[2]

3.    In 2024 Metropolis raised $1.8 billion in financing and bought SP Plus, a parking lot network founded in 1929 and employing 20,000 people, for $1.5 billion to become the largest parking lot company in the country.[3]

4.    In order to fuel such rapid and unprecedented growth, Metropolis has fashioned a system wherein is makes it difficult, if not impossible, to pay

---

[1] https://www.metropolis.io/news/metropolis-closes-acquisition-of-sp-plus (last accessed June 5, 2024).
[2] *Id*.
[3] https://www.prnewswire.com/news-releases/metropolis-closes-1-8-billion-financing-and-completes-transformational-take-private-of-sp-plus-corporation-302147941.html (last accessed June 5, 2024).

**CLASS ACTION COMPLAINT**

for parking at the lots it owns and controls. Instead, it uses license plate reading technology to capture and track users' cars coming in and out of their lots. It then uses the license plate information to illegally harvest Plaintiff's and class members' personal information from the DMV in order to send bills to these unsuspecting users which contain exorbitant late fees and charges.

5. For example, at the parking lot at 2525 McKinnon Street, Dallas, Texas, run by Metropolis, the lot is left open without a gate that would prevent drivers from entering or exiting without paying.

6. When, inevitably, a user drives out of one of Metropolis' open lots without paying, Metropolis illegally harvests that driver's personal information from motor vehicle records to send harassing mailers charging outrageous parking fees and extort "penalty" charges. For instance, Metropolis charges $70 penalty fees on a $10 parking fare.

7. In order to attempt to collect these unlawful and unwarranted amounts, Metropolis employs license plate recognition technology to capture the license plates of each of the drivers who drive on and off Metropolis' parking lots. Metropolis then knowingly and unlawfully obtains individuals' vehicle registration information without their consent.

8. Defendant Metropolis invades the privacy of Plaintiff and Class Members by obtaining protected personal information, including names, addresses and telephone numbers, of Plaintiff and Class Members, from non-public motor vehicle records in violation of the DPPA.

9. Defendant then discloses and uses that personal information to send Plaintiff and Class Members surprise bills in the mail for fees and penalties they never consented to pay—exponentially increasing the charges within weeks of the initial demand.

**CLASS ACTION COMPLAINT**

10.    The DPPA prohibits Defendant from knowingly obtaining personal information—such as "name," "address," "telephone number" and other information that identifies individuals—from motor vehicle records, including information from the DMV. Defendant knowingly and without authorization obtained such information of Plaintiff and members of the Class in violation of the DPPA.

11.    Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of $2,500, reasonable attorney's fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines appropriate, including injunctive relief in the form of a prohibition on Defendant obtaining, using and disclosing personal information obtained from the DMV to send surprise bills through the mail and via text messages.

## PARTIES

12.    Plaintiff Brendan Appel is a natural person and citizen of Illinois, residing in Northfield, Illinois, where he intends to remain.

13.    Defendant Metropolis Technologies, Inc. is a Delaware Corporation with its principal place of business at 1314 7th Street, 5th Floor, in Santa Monica, California 90401.

## JURISDICTION AND VENUE

14.    This Court has "federal question" jurisdiction given the federal claims alleged by Plaintiff. This Court also has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants.

**CLASS ACTION COMPLAINT**

15.    The Court has personal jurisdiction over Defendant because its principal place of business and headquarters are located in Los Angeles County in the city of Santa Monica, State of California, it regularly engages in business in the State of California and in County of Los Angeles, and a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this county.

16.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because: a substantial part of the events giving rise to this action occurred in this District, including decisions made by Defendant's governance and management personnel or inaction by those individuals that led to claim at issue here; Defendant's principal place of business is located in this District; and Defendant caused harm to Class Members residing in this District.

## COMMON FACTUAL ALLEGATIONS

### A.    *Background of the DPPA.*

17.    To protect the privacy and safety of licensed drivers, and to limit misuse of the information contained in these government record systems, Congress, in 1994, enacted the DPPA. The Act imposed strict rules for collecting the personal information in driver records and provides for liability in cases where an entity improperly collects, discloses, uses or sells such records. See generally 18 U.S. Code § 2721, et al.

18.    The DPPA safeguards this personal information from disclosure by state DMVs or acquisition by a third party for any purpose other than the limited permissible purposes expressly delineated in the DPPA.

19.    In creating special protections for data in this particular context, the DPPA responded to concerns over the personal information captured and retained by State motor vehicle records.  Congressional testimony in 1993

**CLASS ACTION COMPLAINT**

highlighted potential threats to privacy and personal safety from disclosure of personal information held in state DMV records; "[u]nlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and address[es] from strangers, and thus limit their access to personally identifiable information" in other records. See 140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards); ibid. (statement of Rep. Moran).

20. Personal information protected by the DPPA "means information that identifies an individual," which may "include[e] an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . " that is obtained "in connection with a motor vehicle record." 18 U.S.C § 2725(3) (emphasis added); 18 U.S.C § 2721(a)(1).

21. "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C § 2725(1).

22. Further to 18 U.S.C § 2724, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

23. The DPPA's general prohibition on disclosure of personal information is subject to fourteen (14) exceptions—the permissible purposes—which allow for the limited disclosure of personal information. Those 14 permitted uses of DMV data are designed to "strik[e] a critical balance between an individual's fundamental right to privacy and safety and

the legitimate governmental and business needs for th[e] information." 140 Cong. Rec. 7925 (1994) (remarks of Rep. Moran).

24.   Notably, the DPPA does not list or identify any specific prohibited uses; rather, it generally prohibits all but the fourteen permissible uses enumerated in §2721(b).

25.   The permissible uses are as follows:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

> (2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

>> (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

>> (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal,

7

**CLASS ACTION COMPLAINT**

State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12 ) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

**CLASS ACTION COMPLAINT**

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

26. As detailed herein, none of those permissible uses apply to Defendant's uses.

27. Plaintiff and Class Members did not submit their personal information to Metropolis nor did they consent to have their personal information shared with Metropolis or for any other third party to request their information from any DMV.

28. Indeed, §§ 2721(a) and 2722(a) make nondisclosure of personal information the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title."). §2721(b) then lists the fourteen discrete exceptions to non-disclosure, exceptions that, again, do not and cannot apply here.

29. The DPPA creates a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under § 2721(b). See 18 U.S.C. § 2724(a); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

**CLASS ACTION COMPLAINT**

**B.      *Metropolis Obtains, Uses & Discloses Personal Information in Violation of the DPPA.***

30.    Metropolis, founded in 2017, describes itself as a Santa Monica-based artificial intelligence company which applies its technology to parking management.[4]

31.    Metropolis recently raised new capital, consisting of $1.05 billion in series C stock funding and $650 million of debt financing, to execute an acquisition of Chicago-based SP Plus Corp. The acquisition of SP Plus is valued at approximately $1.5 billion.[5]   Metropolis now operates over 600 parking lots and garages in nearly 60 cities and processes over $4 billion in payments annually.[6]

32.    Metropolis says it uses automated payments and license plate recognition to leverage AI to track the stay time of vehicles and charge customers without the driver needing to stop to pay.[7] The company said that, while its computer vision technology is currently being applied to parking, it plans to offer its "checkout-free experience" more broadly in the future.[8]

33.    As Metropolis admits, its use of license plate recognition technology is being used to "enabl[e] top-tier real estate owners" "to capture revenue from more than five million consumers who do not have to stop to pay."[9]

---

[4] *See* https://www.metropolis.io/news/metropolis-closes-acquisition-of-sp-plus (last visited June 14, 2024).
[5] *Id*.
[6] *Id*.
[7] *See* https://www.metropolis.io/news/welcome-to-metropolis-series-a (last visited June 14, 2024).
[8] *See* https://labusinessjournal.com/featured/metropolis-raises-1-7-billion-to-aid-its-growth/ (last visited June 14, 2024).
[9] *See* https://www.metropolis.io/news/metropolis-to-acquire-sp-plus (last visited June 14, 2024).

**CLASS ACTION COMPLAINT**

34.    In its Privacy Policy, Metropolis states that it "may utilize Automated License Plate Readers (ALPR) and similar systems to capture and process video or still images of your vehicle and license plate."[10]

35.    Metropolis "use[s] the information captured through the ALPR systems to identify your vehicle and account, which allows us to charge the payment information associated with your account or communicate with you about arranging for such payment."[11]

36.    Metropolis lists the reasons for which it collects license plate information, but it does not disclose that it obtains personal information from motor vehicle records in order to send surprise bills to drivers who use Metropolis parking lots.

## Categories of information collected

See the "Information We Collect" and "How We Disclose Information" sections above for additional information.

### Identifiers

**Examples:** such as name, license plate number and state, and other similar identifiers.

**Purpose of use:**

- Process orders
- Provide the Services and customer service
- Verify and authenticate your information, account, and interactions with us
- Communicate with you
- Personalize your experience and customize the Services
- Understand your interests and engage in research, analysis, and reports
- Our marketing and advertising purposes
- Bug detection and error reporting
- Security, fraud, and legal compliance

37.    In employing its scheme, Defendant used the license plate numbers it obtained through Automated License Plate Recognition technology to directly obtain, disclose, and use personal information of Plaintiff and Class Members from DMVs, including the Illinois state motor vehicle records.

---

[10] *See* https://www.metropolis.io/privacy (last visited June 14, 2024).
[11] *Id.*

**CLASS ACTION COMPLAINT**

38.    Metropolis has admitted to exactly this practice.  In response to 66 complaints made to the Tennessee Attorney General's Office about Metropolis' punitive and unfair parking practices (including charging for parking when the driver did not park in the facility, charging $57 for 49 minutes of parking, and receiving bills with excessive penalty fees),[12] Metropolis responded by admitting that it used the license plate information to obtain drivers' personal information from the Tennessee DMV:

> **Our system traces license plates attached to Tennessee government records.** We send notices to the addresses on file associated with those license plates.[13]

39.    In a February 20, 2024 email from a Metropolis representative to Plaintiff, Metropolis again admitted to using license plate information to obtain personal information from the DMV, in that case the Illinois DMV: "**Your vehicle was captured by our camera on our facility and State records indicate that you are the registered owner of this vehicle.**"

40.    The use is problematic because Defendant misuses driver records under no permissible purpose under the DPPA. Indeed, Defendant has never claimed it uses driver records from state DMV officers under any permissible purposes.

41.    In response to this unlawful debt collection activity, consumers around the country have been flooding online review boards about Defendant's misconduct, a sampling of which is below:

---

[12] *See* https://www.wkrn.com/news/local-news/nashville/dozens-of-complaints-made-against-metropolis-parking-in-nashville-tn/ (last visited June 14, 2024).

[13] *See* https://www.newschannel5.com/news/metropolis-parking-responds-after-complaints-about-nashville-private-lots (last visited June 14, 2024).

**CLASS ACTION COMPLAINT**

## C.    *Plaintiff Appel's Allegations.*

42.    Mr. Appel is a victim of Defendant's scheme. Defendant unlawfully obtained and disclosed his personal information from state motor vehicle records without his consent in order to bill him for parking he never agreed to pay and to add exorbitant penalties.

43.    On or about February 2, 2024, Mr. Appel's daughter parked a car registered and owned by Mr. Appel in the open, gateless garage at 2525 McKinnon Street, Dallas, Texas. Plaintiff's daughter saw no warning that she would need to pay a fee nor any reasonable notice that she may be charged if she parked in the lot.  There was no gate at the lot and no means by which to issue a ticket for parking or otherwise to inform drivers that they were to pay for parking at this open lot.

44.    Weeks later, on or about February 20, 2024, Mr. Appel received a collection notice from Defendant Metropolis that was mailed to his work address, the same address to which his car was registered, and claimed that he owed a $10 fee for parking and an additional fine of $70.25. The letter

threatened that nonpayment may result in being reported to collections or "other legal action, future ticketing, booting and/or towing."

45.    The letter included his name, address, his license plate number, identified the 2525 McKinnon parking garage as the location upon which he incurred his parking fine, and included a picture of the rear of his motor vehicle, taken at the entrance and exit of the 2525 McKinnon parking garage, that clearly displayed the license plate of his motor vehicle and the license plate number.

46.    That same day, Mr. Appel contacted Metropolis through its online chat function and communicated with a representative from Metropolis.  Mr. Appel explained that the gates at the parking lot at 2525 McKinnon were up, that there was no system to issue a ticket, and no other way to pay for parking the night the fee and penalty were issued.  The representative for Metropolis refuted Mr. Appel's version of events, though the representative provided no evidence specific to the 2525 McKinnon parking lot to the contrary and refused to refund either the parking charge or the $70 penalty.

47.    The Metropolis representative, when asked by Mr. Appel how Metropolis obtained his vehicle registration information, admitted that Mr. Appel's "vehicle was captured by our camera on our facility and State records indicate that you are the registered owner of this vehicle."

48.    In all, Mr. Appel spent over four hours communicating with representatives of Metropolis to dispute his bill.  Mr. Appel also spent many more hours researching Metropolis and the circumstances surrounding the events leading to Metropolis' issuing the parking fee and penalty charges.

49.    On or around April 1, 2024, Metropolis sent Mr. Appel a second letter again demanding payment.  The second letter was also mailed to his place of work and included his name, work address, his  license plate number,

**CLASS ACTION COMPLAINT**

identified the 2525 McKinnon parking garage as the location upon which he incurred his parking fine, and included a picture of the rear of his motor vehicle, taken at the entrance and exit of the 2525 McKinnon parking garage, that clearly displayed the license plate of his motor vehicle and the license plate number.

50.    Mr. Appel never provided Defendant the personal information needed to identify him by name and address.

51.    Defendant's misconduct has harmed Plaintiff, including by invading his privacy through the obtaining, using and disclosing his private information, violating his rights under the DPPA, misusing his protected information to claim charges he never agreed to pay and then doubling, tripling, and even quadrupling those penalties, caused Plaintiff to lose time and harmed them emotionally by misusing their protected information to threaten them with collection actions.

## CLASS ACTION ALLEGATIONS

52.    <u>Class Definition</u>**:** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals (the "Class"), as defined as follows:

> All individuals residing in the United States who had their personal motor vehicle records, maintained by a State Motor Vehicle Department, directly obtained, used, redisclosed and/or resold by Defendant for purposes not permitted by the DPPA.

53.    Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

54.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues,

**CLASS ACTION COMPLAINT**

1  and ending on the date of entry of judgment.

2      55.    Excluded from the Class is Defendant; any affiliate, parent, or

3  subsidiary of Defendant; any entity in which Defendant has a controlling

4  interest; any officer director, or employee of Defendant; any successor or

5  assign of Defendant; anyone employed by counsel in this action; any judge to

6  whom this case is assigned, his or her spouse and immediate family members;

7  and members of the judge's staff.

8      56.    <u>Numerosity/Ascertainability.</u> Members of the Class are so

9  numerous that joinder of all members would be unfeasible and not practicable.

10  The exact number of Class Members is unknown to Plaintiff at this time.

11  However, it is estimated that there are at least thousands of individuals in the

12  Class. The identity of such membership is readily ascertainable from

13  Defendant's records and non-party Facebook's records.

14      57.    <u>Typicality.</u> Plaintiff's claims are typical of those of the Class

15  because Plaintiff—like all members of the Class—had his personal motor

16  vehicle records, maintained by a State Motor Vehicle Department, directly

17  obtained, used, redisclosed and/or resold by Defendant for purposes not

18  permitted by the DPPA.

19      58.    <u>Adequacy.</u> Plaintiff is fully prepared to take all necessary steps to

20  represent fairly and adequately the interests of the Class Members. Plaintiff's

21  interests are coincident with, and not antagonistic to, those of the Class

22  Members. Plaintiff is represented by attorneys with experience in the

23  prosecution of class action litigation generally and in the emerging field of

24  digital privacy litigation specifically. Plaintiff's attorneys are committed to

25  vigorously prosecuting this action on behalf of the Class.

26      59.    <u>Common Questions of Law and Fact Predominate/Well-Defined</u>

27  <u>Community of Interest.</u> Questions of law and fact common to the Class

28

**CLASS ACTION COMPLAINT**

predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. The following questions of law and fact are common to the Class:

      a. whether Defendant collected Plaintiff's and the Class's personal information;

      b. whether Plaintiff's and the Class's personal information was contained in a motor vehicle record;

      c. whether Defendant unlawfully obtained and used Plaintiff's and the Class's personal information in violation of the DPPA;

      d. whether Defendant's actions were committed knowingly; and

      e. The nature and extent of all statutory penalties or damages for which Defendant are individually liable to Plaintiff and Class Members, and;

      f. Whether punitive damages are appropriate.

60. <u>Superiority.</u> Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff is unaware of any special difficulty to be encountered in litigating this action that would

**CLASS ACTION COMPLAINT**

preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of the Driver's Protection Privacy Act**
**18 U.S.C. § 2721, et seq.**
**(On behalf of Plaintiff & the Nationwide Class)**

61.    Plaintiff incorporates and realleges the above factual allegations by reference.

62.    The Driver's Privacy Protection Act, 18 U.S.C. § 2721(a), et seq., prohibits a person or organization from knowingly obtaining or disclosing personal information, or highly restricted personal information contained in motor vehicle records for any purpose not specifically permitted under 18 U.S.C. § 2721(b).

63.    Defendant violated 18 U.S.C. §2721, et seq., by intentionally obtaining, using, re-disclosing and/or reselling Plaintiff and Class Members' motor vehicle records without knowledge, consent or authorization for purposes not specifically permitted under the act.

64.    Plaintiff and Class Members are individuals within the meaning of 18 U.S.C. §2725(2).

65.    The names, addresses, telephone numbers and other information that Defendant obtained from motor vehicle records pertaining to Plaintiff and Class Members was "personal information" as defined under 18 U.S.C. §2725(3).

66.    The contents of Plaintiff's and Class Members' records obtained by Defendant constitute a "motor vehicle record," because they contain records that "pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of

**CLASS ACTION COMPLAINT**

motor vehicles," within the meaning of 18 U.S.C. §2725(1).

67.  Defendant was not an authorized recipient under 18 U.S.C. § 2721(c).

68.  18 U.S.C. §§ 2721(a) and 2722(a) make nondisclosure of personal information the default rule. See 18 U.S.C. § 2721(a) ("In general" prohibiting disclosure of personal information "except as provided in subsection (b)"); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

69.  18 U.S.C. §2721(b) provides fourteen discrete exceptions to non-disclosure.  None of those exceptions are applicable to Defendant's use of Plaintiff and Class Members' personal information.

70.  Defendant knowingly used the personal information it obtained from the motor vehicle records to disclose and mail collection letters to Plaintiff and Class Members' home address in an attempt to collect parking fees and penalties to which Plaintiff and Class Members did not consent.

71.  Defendant did not obtain express consent from Plaintiff or Class Members to obtain or use their personal information for this purpose.

72.  Defendant is liable directly and/or vicariously for failing to use reasonable care to investigate permissible uses when re-disclosing and Plaintiff's and Class Members' motor vehicle records.

73.  As a direct and proximate result of the aforesaid acts and activities of Defendant, Plaintiff and Class Members have sustained harm including but not necessarily limited to, intrusion upon their seclusion, invasions of their privacy, the time wasted reviewing Defendant's collection messages and the data and space used on their mobile devices.

74.  As provided by the DPPA, Plaintiff and the Class Members seek:

**CLASS ACTION COMPLAINT**

(i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with DPPA's requirements; (iii) statutory damages of $2,500 for each violation of the DPPA pursuant to 18 U.S.C. § 2724(a) and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **RELIEF REQUESTED**

75.    Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court grant the following relief:

a. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

b. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

c. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

d. For a declaration that Defendant's actions violated the Federal Driver's Privacy Protection Act, 18 U.S.C. §2721, and for all actual damages, statutory damages, penalties, and remedies available as a result of Defendant's violations of the DPPA, but not less than liquidated damages in the amount of $2,500 for each Plaintiff and each member of the Class.

e. For an order awarding injunctive and equitable relief including, inter alia: (i) prohibiting Defendant from engaging in the acts alleged above; (ii) requiring

**CLASS ACTION COMPLAINT**

Defendant to disgorge all of its ill-gotten gains to Plaintiff and the other Class Members motor vehicle records, or to whomever the Court deems appropriate; (iii) awarding Plaintiff and Class Members full restitution of all benefits wrongfully acquired by Defendant by means of the wrongful conduct alleged herein; and, (iv) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

f.   For an award to Plaintiff and the Class of their costs and expenses of this litigation;

g.   For an award to Plaintiff and the Class for their reasonable attorneys' fees;

h.   An award to Class Members of damages, including but not limited to: compensatory, statutory, exemplary, aggravated, and punitive damages, as permitted by law and in such amounts to be proven at trial;

i.   An award of statutory damages to the extent available;

j.   For pre-and post-judgment interest as allowed by law and

k.   For such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Class, demands a trial by jury for all claims asserted herein and so triable.

21

**CLASS ACTION COMPLAINT**

DATED: June 27, 2024

Matthew J. Langley
California Bar No. 342846
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 773-554-9354
matt@almeidalawgroup.com

Andrew G. Gunem
California Bar No. 354042
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
t: (872) 263-1100
agunem@straussborrelli.com

*Attorneys for Plaintiff & the Class*

**CLASS ACTION COMPLAINT**